# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

KYLIE MCKENZIE,

        Plaintiff,

v.                                     Case No:   6:22-cv-615-PGB-LHP

UNITED STATES TENNIS
ASSOCIATION INCORPORATED
and USTA PLAYER DEVELOPMENT
INCORPORATED,

        Defendants

_____

## ORDER

    This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO COMPEL MARK MCKENZIE'S DEPOSITION OR TO EXCLUDE HIS TESTIMONY AT TRIAL (Doc. No. 79)** |
| **FILED:** | **September 13, 2023** |
| | |
| **THEREON** it is **ORDERED** that the motion is **GRANTED in part and DENIED in part**. | |

    The present dispute concerns the deposition of Plaintiff's father, Mark McKenzie ("Mr. McKenzie") taken on August 24, 2023, during which deposition

Plaintiff's counsel—who also represents Mr. McKenzie—instructed Mr. McKenzie not to answer numerous questions.   Doc. No. 79.   *See also* Doc. No. 79-4 (copy of deposition transcript). [1]   As set forth in the parties' briefing, the deposition questions at issue concern four general areas of inquiry, including (1) Plaintiff's relationships with others (her coach after the incidents in question, Rafael Font de Mora, and her friend, CiCi Bellis), and Mr. McKenzie's knowledge thereof; (2) Plaintiff's progress in her tennis career; (3) Mr. McKenzie's financial situation and the funding of Plaintiff's tennis career; and (4) Mr. McKenzie's relationship with Plaintiff's counsel, such as existence of a fee agreement between them and whether they conversed about the deposition prior to it occurring.   Doc. Nos. 79, 84, 86, 89. Defendants contend that the first three categories constitute stressors pertinent to Plaintiff's claims for damages, while the last category is relevant to establishing bias. Doc. Nos. 79, 86.

Broadly speaking, during the deposition, Mr. McKenzie's counsel asserted objections to the first three categories of information based on the right to privacy and relevance.   *See* Doc. No. 79-4.[2]   Counsel objected to the questions regarding

---

[1] It does not appear that a subpoena issued for Mr. McKenzie's deposition, as counsel for Plaintiff agreed to accept service and produce Mr. McKenzie for deposition before the discovery period expired.   Doc. No. 84-1, at 17.

[2] Defendants have filed two copies of the deposition transcript, *see also* Doc. No. 86-1, but the Court cites to the copy of the transcript attached to the initial motion, *see* Doc.

the attorney-client relationship between Mr. McKenzie and counsel as privileged. *See id.*

By the above-styled motion, Defendants ask the Court to compel Mr. McKenzie to sit for another deposition to answer these questions, and to overrule his objections to same.   Doc. No. 79.   Alternatively, Defendants seek to exclude Mr. McKenzie's testimony at trial.   *Id.*

In response, Plaintiff[3] contends that Defendants' motion is untimely because it was filed three weeks after Mr. McKenzie's deposition and at the close of discovery, the topics at issue were "sufficiently explored" during the deposition; "[a]ll questions were answered" regarding Plaintiff's tennis career, questions related to finances invade Mr. McKenzie's privacy; "[a]ll questions related to this case were answered" regarding the attorney-client relationship at issue in this case; and the sole purpose of the request to re-depose Mr. McKenzie is to harass Plaintiff. Doc. No. 84.

Upon consideration of the motion and response, the Court ordered supplemental briefing from the parties.   Doc. No. 85.   Upon receipt of same, Doc.

_____

No. 79-4.

[3] It appears that counsel has filed the response briefing on behalf of Plaintiff alone. Doc. No. 84.   *See also* Doc. No. 89.   There are no responsive filings on the docket filed on behalf of Mr. McKenzie in relation to the deposition, nor has any privilege log been submitted on Mr. McKenzie's behalf.

Nos. 86, 89,[4] the matter is ripe for review.   And on review, the motion will be granted, for the most part.[5]   In so ruling, the Court rejects Plaintiff's contention that Defendants' motion is untimely because it was filed three weeks after the deposition and because Defendants allegedly delayed in scheduling the deposition.   *See* Doc. No. 84, at 1; Doc. No. 89, at 2–5.   The deposition was scheduled within the discovery deadline set forth by the Court and the motion to compel was filed within the time parameters of same.   Doc. No. 64, at 1 (setting September 15, 2023 discovery deadline).   *See also id.* at 7 ("[T]he Court routinely denies motions to compel that are filed *after the discovery deadline* as untimely." (emphasis added)). Plaintiff cites no authority demonstrating that a contrary ruling is appropriate, and the decisions Plaintiff does cite either stand for the general proposition that good cause is required to extend a deadline, and/or are readily factually distinguishable.

---

[4] The Court struck Plaintiff's initial supplemental briefing for failure to comply with the Order requiring supplemental briefing.   *See* Doc. Nos. 87–88.   The Court notes that this was not the first time a filing by Plaintiff was stricken for failure to comply with a Court Order.   *See* Doc. Nos. 82–83.   Counsel for Plaintiff is cautioned that future filings that fail to comply with Court Orders may be stricken without leave to refile.

[5] Given that, as discussed herein, the Court will allow a second deposition of Mr. McKenzie, Defendants' alternative request to exclude Mr. McKenzie's testimony at trial will be denied.

*See* Doc. Nos. 84, 89.[6]   The Court will address each of the deposition objections at issue in turn.[7]

*Attorney-Client Relationship*

During the deposition, defense counsel asked Mr. McKenzie whether he had a fee agreement with Plaintiff's counsel (Attorney Robert Allard), and the date of same, specifying that counsel was not asking for the contents of the agreement. Doc. No. 79-4, at 9–10.[8]   Attorney Allard objected based on the attorney-client privilege and instructed Mr. McKenzie not to answer.  *Id.*   Defense counsel also asked Mr. McKenzie if he spoke to Attorney Allard prior to the deposition, and for the date and length of the conversation, clarifying that defense counsel was not

---

[6] For example, Plaintiff cites to *Yergey v. Brinker Florida, Inc.*, No. 6:20-cv-917-Orl-37LRH, 2021 WL 3729254, at *5 (M.D. Fla. Jan. 28, 2021), however in *Yergey*, the defendant sought to extend the discovery deadline to take an additional number of depositions, whereas in this case, Defendants actually conducted Mr. McKenzie's deposition prior to the close of discovery, and merely seek to complete the questioning that was prevented by Plaintiff's counsel.   And in *Inman v. Richman Property Services, Inc.*, No. 3:13-cv-941-J-32MCR, 2014 WL 4639131, at *3 (M.D. Fla. Sept. 16, 2014), the plaintiff did not even file her motion to compel until one month after the close of discovery.

[7] To the extent that Defendants argue that Plaintiff has waived her challenges to the deposition questions by failing to file a motion for protective order, the Court declines to consider the argument because Defendants did not raise the issue in their initial motion. *See* Doc. No. 79.   *See also* Doc. No. 85 (ordering supplemental briefing "limited to the issues raised in the Motion and Response; issues not previously raised will not be considered.").

[8] Citations to the deposition transcripts submitted by the parties refer to the internal pagination provided on the transcripts.

- 5 -

asking for the contents of said conversation.   *Id.* at 15–17.   Attorney Allard again objected based on privilege and instructed Mr. McKenzie not to answer.   *Id.*

In her initial briefing, Plaintiff argues that "[t]he only attorney-client questions that Mr. McKenzie did not answer were questions related to his attorney relationships *in other matters*.   All questions related to this case were answered." Doc. No. 84, at 3 (emphasis in original).   This representation is clearly inaccurate based on a review of the deposition transcript.   *See* Doc. No. 79-4, at 9–10, 15–17. In her supplemental briefing, Plaintiff appears to pivot, and argues that "information on the fee arrangements between a client and an attorney," as well as the conversation between Mr. McKenzie and Attorney Allard prior to the deposition, are privileged.   Doc. No. 89, at 6–7.

The Court questions whether Plaintiff may now defend these privilege objections on Mr. McKenzie's behalf, given that no response to the motion has been filed by Mr. McKenzie or on his behalf nor has a privilege log been submitted on Mr. McKenzie's behalf.   *See* Fla. Stat. § 90.502(3) (listing who can claim the privilege).   *See also* Doc. No. 54, at 7–8 (discussing cases regarding lack of standing to assert privilege objections on behalf of a non-party); *Kleiman v. Wright*, No. 18-CV-80176, 2020 WL 1849407, at *7 (S.D. Fla. Apr. 13, 2020) (finding that "under Florida law, Defendant lacked authority to assert the attorney-client privilege on

behalf of the third-party entities").   Even assuming she can, however, Plaintiff fails to adequately support the objections.

At the deposition, defense counsel did not ask for the contents of any fee arrangement, and likewise did not ask for the contents of any conversation between Mr. McKenzie and Attorney Allard.   Instead, defense counsel was inquiring as to the *existence* of a fee arrangement, and the date and length of conversations Mr. McKenzie had with Mr. Allard prior to the deposition, but not their contents.   *See* Doc. No. 79-4, at 9–10, 15–17.   Plaintiff fails to demonstrate in her response that the attorney-client privilege would apply to answers to these questions.   *See* Doc. No. 89, at 5–7.[9]   *See also Thompson v. Cincinnati Ins. Co.*, No. 3:10CV318/RS/EMT, 2010 WL 4667100, at *3 (N.D. Fla. Nov. 9, 2010) ("The attorney-client privilege protects the confidentiality of communications within the attorney-client relationship, not

_____

[9] The cases cited by Plaintiff are not on point, and do not address whether the *existence* of a fee agreement or the fact that a conversation between counsel and client occurred are privileged.   *Tumelaire v. Naples Estates Homeowners Ass'n, Inc.*, 137 So. 3d 596 (Fla. 2d Dist. Ct. App. 2014) concerned the *contents* of a fee arrangement and billing records. *Corry v. Meggs*, 498 So. 2d 508, 511 (Fla. 1st Dist. Ct. App. 1986) addressed whether the identity of a client and the payment of a fee by a third-party fall within the privilege, which holding the court limited to the specific facts of that case.   *Corey* also recognized that the "general rule" is "that the identity of a client and the payment of attorney fees are merely underlying facts of an attorney-client relationship, not confidential communications contemplated as privileged under the common law or the Code."   *Id.   HCA Health Servs. of Florida, Inc. v. Hillman*, 870 So. 2d 104 (Fla. 2d Dist. Ct. App. 2003) concerned privileged information contained within billing records, which is not at issue here.   Notably, *Hillman* was disapproved of in *Paton v. GEICO General Insurance Co.*, 190 So. 3d 1047 (Fla. 2016).

- 7 -

the external trappings of the relationship, such as facts relating to the creation or existence of the attorney-client relationship. . . .   Accordingly, the dates, times, and places of a client's meetings with his or her attorney are not protected." (citations omitted)); *Anderson Columbia v. Brown*, 902 So. 2d 838, 841–42 (Fla. 1st Dist. Ct. App. 2005) ("The hours expended and rate charged by defense counsel is not information protected by either the attorney-client or work product privilege.").   *Cf. Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, No. 5:04-cv-12-Oc-10GRJ, 2009 WL 10675487, at *3 (M.D. Fla. Aug. 3, 2009) (overruling attorney-client privilege objection where the proponent failed to carry burden of demonstrating that the privilege applied, noting that "the identity of a client or a receipt of fees from a client are not normally covered by the attorney-client privilege.").

So, Defendants' motion in this regard is well taken.

### *Plaintiff's Relationships*

During the deposition, defense counsel asked Mr. McKenzie about Plaintiff's relationships with Rafael Font de Mora and CiCi Bellis.   Specifically, as it relates to Mr. Font de Mora,[10] defense counsel inquired about, among other things:   (1)

---

[10] According to the record, after the incidents giving rise to the present case, Plaintiff began training with a new coach, Mr. Font de Mora.   To pay for his services, Plaintiff contractually agreed to give Mr. Font de Mora proceeds from any judgment or settlement in this case.   Mr. Font de Mora became "too involved," and thereafter the contract with Mr. Font de Mora was declared void.   Doc. No. 86-2, at 35, 40, 133–34, 290,

emails from Mr. Font de Mora; (2) communications between Mr. McKenzie and Mr. Font de Mora that Mr. McKenzie produced; (3) whether Mr. McKenzie had "a good relationship" with Mr. Font de Mora throughout 2021; (4) Attorney Allard severing the relationship between Plaintiff and Mr. Font de Mora in 2022; and (5) Plaintiff's termination of her agreement with Mr. Font de Mora.   Doc. No. 79-4 at 74–75, 78–82.   Attorney Allard objected to these questions on relevancy and privacy grounds, and instructed Mr. McKenzie not to answer.   *Id.*

Regarding CiCi Bellis, [11] defense counsel asked Mr. McKenzie about a message between Plaintiff and Mr. McKenzie, in which Mr. McKenzie asked Plaintiff about a New York Times article and whether Plaintiff was concerned about a picture of Ms. Bellis appearing in the article.   *Id.* at 87–90.   Attorney Allard objected to these questions on relevancy and privacy grounds, and instructed Mr. McKenzie not to answer.   *Id.*

Defendants contend that these areas of inquiry are relevant to Plaintiff's damages, as stressors in Plaintiff's life.   Doc. No. 79, at 2; Doc. No. 86, at 9–10.   In response, Plaintiff first argues that Defendants "fail to cite a single question related

_____

292; Doc. No. 86-3.

[11] Ms. Bellis was disclosed as an individual likely to have discoverable information on Plaintiff's initial disclosures, and was the first person Plaintiff told about the sexual assault alleged in this case.   Doc. No. 84-1, at 7.

to Mora that went unanswered," and that the relationship with Ms. Bellis was "fully explored." Doc. No. 84, at 2.   These assertions are again readily belied by the deposition transcript.   *See* Doc. No. 79-4, at 74–75, 78–82, 87–89.[12]   Then, Plaintiff argues that allowing re-deposition of Mr. McKenzie regarding Mr. Font de Mora would be cumulative given the content of Plaintiff's deposition.   Doc. No. 89, at 10–11.   Plaintiff also argues that the deposition transcript demonstrates that Mr. McKenzie lacks personal knowledge of the relationship between Plaintiff and Ms. Bellis, and any attempt to re-depose Mr. McKenzie on this issue is simply a means to harass.   *Id.* at 11–12.

Plaintiff, to the extent that she may so defend it, fails to support any "privacy" objection to these areas of inquiry – and appears to have abandoned this objection in her supplemental briefing.   Doc. Nos. 84, 89.   *See also Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 694 (S.D. Fla. 2011) (finding that a party lacks standing to object to discovery based on the privacy rights of non-parties; *Alterra Healthcare Corp. v. Est. of Shelley*, 827 So. 2d 936, 941-43 (Fla. 2002) (finding party lacked standing to assert right to privacy objection on behalf of third parties).   And to the extent that Attorney Allard raised a relevancy objection with an instruction not to answer, this

---

[12] Counsel for Plaintiff is reminded of their duty of candor and obligations under Fed. R. Civ. P. 11.

was improper.  Fed. R. Civ. P. 30(c)(2).  *See Larweth v. Magellan Health, Inc.*, No. 6:18-cv-823-Orl-41DCI, 2019 WL 11866498, at *13 (M.D. Fla. July 16, 2019) ("It is arguable whether objections on relevancy should be made during depositions; however, if counsel feels compelled to make a relevancy objection, he may do so, but the deposition should continue with the testimony being taken subject to the objection.  Thus, during the deposition, Defendant's counsel could have made a relevancy objection and then instructed the deponent to proceed with his testimony." (quotation marks and citation omitted)); *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, Inc.*, No. 6:10-cv-1103-Orl-31GJK, 2011 WL 13298682, at *3 (M.D. Fla. Oct. 5, 2011) ("Generally, it is improper for a party to instruct a witness not to answer based purely on a relevance objection.").

Moreover, Plaintiff's conclusory arguments that the purpose of Defendants' motion and deposition of Mr. McKenzie is to "harass and annoy" Plaintiff are unavailing, absent some additional argument and record support for these broad statements.  *Cf. Silver Star Health & Reahb, Inc.*, 2011 WL 13298682, at *3 (conclusory statements will not support request for a protective order after instructing witness not to answer questions at deposition).  *See also Mays v. Ostafin*, No. 15 C 1439, 2023 WL 4744949, at *2 (N.D. Ill. July 25, 2023) (rejecting conclusory arguments under Federal Rule of Civil Procedure 30(d)(3)(A)).  So too are Plaintiff's suggestions that Mr. McKenzie lacks personal knowledge, as most of the questions posed at the

deposition relate to messages crafted by Mr. McKenzie himself. *See* Doc. No. 79-4, at 74–75, 78–82, 87–89. Finally, Attorney Allard did not raise an objection at the deposition that the information sought from Mr. McKenzie was cumulative, nor does Plaintiff adequately demonstrate here that instructing Mr. McKenzie not to answer questions at the deposition due to the allegedly cumulative nature of the information was appropriate. *See* Doc. Nos. 84, 89.

Accordingly, Defendants' motion in as it relates to the "relationships" areas of inquiry is well taken.

*Progress in Tennis Career*

During the deposition, the following exchange took place:

Q.  There is MM 24, which is a text, has Kylie at the top and there's some blue there, it says:  Looks like you're hitting really good right now.  Do you see that?

MR. ALLARD:  Objection; privacy.  You need not answer that question.

MR. SHAUGHNESSY:  Goes to damages, counsel.

MR. ALLARD:  What goes to damages?

MR. SHAUGHNESSY:  Whether she's p[l]aying good tennis or not.

MR. ALLARD:  We are not claiming that this has impacted her tennis career.  We are claiming non-economic damages, sir.  We are not claiming this has affected her tennis career.

MR. SHAUGHNESSY:  So you're not going to offer any testimony at trial, you can stipulate right now, you're not going to offer any

testimony at trial that this somehow impacted her ability to succeed as a tennis player?   Because if you don't give me that stipulation, sir, I am going to go into these questions, and we will go to the magistrate judge on this issue.

MR. ALLARD:   You don't have to raise your voice with me, sir, please. I heard you ask it the first time, and my silence means I'm thinking about it.   Okay?   But I want to confer with my client before I do that, as a responsible person would.   You're asking me to make stipulation on the fly.   I can't do that.

MR. SHAUGHNESSY:   I was responding to your objection and saying it has nothing to do with the case.   If that's the case, I can limit my questions, but if it's not the case, I'm allow to go into this.   So if you want to talk to your client, I'm absolutely fine with that.

MR. ALLARD:   Okay.   Why don't you set those questions aside and give me a chance to talk to Kylie, in the spirit of moving on.

MR. SHAUGHNESSY:   Let's take a break now, because I'd like to get into there.   Oh, you want to talk to Kylie too?   You can talk to her. We'll take a break right now, and you can talk to her.

MR. ALLARD:   So you want a stipulation from me that part of our damage claim for non-economic damages would not include a claim that her tennis career was negatively impacted.   Is that what you're asking me?

MR. SHAUGHNESSY:   That's correct.

MR. ALLARD:   Okay.   Let's go off the record and take a quick break. . . . .

MR. ALLARD: Counsel, I am not prepared to stipulate to anything at this time for a variety of reasons.   I don't see how the stipulation would serve to curtail any questions you have anyway.   So we are going to keep proceeding as we are.   And I'm going to, again, urge you to get to some relevant questions before we decide to file a motion for protective order and abort the deposition.   Thank you.

- 13 -

Doc. No. 79-4, at 83–86.

Defendants argue that without the requested stipulation, Plaintiff's progress in her tennis career is relevant to her claim for damages.   Doc. No. 79, at 3; Doc. 86, at 10–11.   *See also* Doc. No. 34 ¶ 50 (claiming "loss of earnings" and "loss of ability to earn money" as damages).   In response, Plaintiff contends that "[a]ll questions were answered" on this topic, Doc. No. 84, at 2; Doc. No. 89, at 12, an assertion yet again belied by the deposition transcript.   *See* Doc. No. 79-4, at 83–86.

Given that Plaintiff fails to support the privacy objection raised at the deposition to the line of questioning regarding Mr. McKenzie's comment that Plaintiff was "hitting really good right now," Doc. No. 84, 89, Defendants' motion in this regard is also well taken.   *See generally Jackson v. Geometrica, Inc.*, No. 3:04-cv-640-J-20HTS, 2006 WL 213860, at *1 (M.D. Fla. Jan. 27, 2006) (objections not addressed in response to a motion to compel are deemed abandoned); *Bercini v. City of Orlando*, No. 6:15-cv-1921-Orl-41TBS, 2016 WL 11448993, at *2 (M.D. Fla. Sept. 28, 2016) (same).

*Finances*

Finally, at the deposition, defense counsel asked Mr. McKenzie several questions related to his finances, such as whether he has filed for bankruptcy, whether he has been involved in prior lawsuits, and whether any tax liens have

been filed against him.   Doc. No. 79-4, at 19–20.   Defense counsel also asked about the funding of Plaintiff's tennis career.   *Id.* at 106–07.   Attorney Allard objected to these questions, citing "right to privacy" and "relevance" and instructing Mr. McKenzie not to answer the questions.   *Id.* at 19–20, 106–07.

Defendants claim that this information is relevant to Plaintiff's stressors and damages, and that Plaintiff placed her finances and her family's finances at issue in this case.   Doc. No. 79, at 3; Doc. No. 86, at 8.   *See also* Doc. No. 34 ¶ 25 (stating that Coach Aranda engaged in personal conversations with Plaintiff to get her to open up and he knew that Plaintiff's "parents struggled financially"); Doc. No. 86-2, at 79 (Plaintiff's deposition testimony addressing financial difficulties, testifying that "[t]ennis is an expensive sport, and it's -- it was hard on [her] parents.").   In response, Plaintiff maintains that the questions related to Mr. McKenzie's finances invade his right to privacy, and thus Defendant must demonstrate relevance to ask deposition questions regarding same.   Doc. No. 84, at 3-4; Doc. No. 89, at 9.

Again, the Court questions whether Plaintiff may defend Mr. McKenzie's objections in this regard.   *See Adelman*, 276 F.R.D. at 694 (S.D. Fla. 2011); *Est. of Shelley*, 827 So. 2d at 943.   And an instruction not to answer a deposition question based on relevancy alone is improper.   *See Larweth*, 2019 WL 11866498, at *13; *Silver Star Health & Rehab, Inc.*, 2011 WL 13298682, at *3.

Assuming the issue is properly before the Court, however, Plaintiff has not demonstrated that the "right to privacy" objection was properly asserted to questions regarding public filings, such as bankruptcies, lawsuits, or tax liens. Again, Plaintiff cites no case law on point.   Doc. No. 84, at 3; Doc. No. 89, at 8–9.[13] *See generally Bd. of Cty. Comm'rs of Palm Beach Cty. v. D.B.*, 784 So. 2d 585, 591 (Fla. 4th Dist. Ct. App. 2001) ("There is no right to privacy in public records in which there is no legitimate expectation of privacy from governmental intrusion.").   *See also Greisdorf v. Governor, State of Fla.*, No. 6:15-cv-775-Orl-28KRS, 2015 WL 9243894, at *3 (M.D. Fla. Nov. 10, 2015), *report and recommendation adopted*, 2015 WL 9255337 (M.D. Fla. Dec. 17, 2015) ("[T]here is . . . no constitutional right to privacy in information that is readily available to the public, including . . . judicial proceedings." (quoting *Larsen v. Johnston*, 327 F. App'x 53, 55 (10th Cir. 2009))).

---

[13] The only case Plaintiff cites is *NetJets Aviation, Inc. v. Peter Sleiman Development Group, LLC*, No. 3:10-cv-00483-J-32JBT, 2011 WL 768066 (M.D. Fla. Feb. 28, 2011), which concerned a "broad subpoena directed to a non-party . . . to produce all documents relating to various bank accounts, mortgages, and/or loan agreements relating [the individual defendant] since January 1, 2004, all communications between her and [the non-party], and all notes, memoranda, reports, summaries, forms, applications, and worksheets relating to [the individual defendant]."   The court said that to the extent that these broad swaths of information have any "marginal relevancy," the relevancy was outweighed by the private nature of the financial records.   *Id.* at *1–2.   Here, in contrast, defense counsel was asking about three discrete categories of financial records that would generally be part of the public domain.

Accordingly, Defendants' motion in this regard is also well taken.

*Conclusion*

For the reasons discussed herein, the Motion to Compel Mark McKenzie's Deposition or to Exclude His Testimony at Trial (Doc. No. 79) is **GRANTED in part and DENIED in part**.   It is **ORDERED** that Defendants will be permitted to re-depose Mr. McKenzie within **thirty (30) days** of this Order.    The deposition shall not exceed **four (4) hours** in length, and shall be limited to the topics addressed in this Order.[14]   The motion (Doc. No. 79) is otherwise **DENIED**.   On or before **October 11, 2023**, the parties shall meet and confer regarding the date of the deposition.   On or before that date, Defendants shall file a notice with the Court setting forth the date, time, and location of the deposition.   If the parties are unable to reach an agreement by that date, Defendants shall file a notice stating same, and the Court will set the deposition on its own accord.   In accordance with Defendants' representations, *see* Doc. No. 86, at 14–15, the continuation deposition testimony of Mr. McKenzie may not be used by either party in summary judgment filings, including any reply brief.[15]

_____

[14] The deposition transcript reflects that Mr. McKenzie's deposition commenced at 9:33 a.m. and concluded at 12:26 p.m., not to include breaks.   Doc. No. 79-4.   Thus, the Court will limit the second deposition to four (4) hours.   *See* Doc. No. 64, at 4 (limiting depositions to seven (7) hours pursuant to Federal Rule of Civil Procedure 30(d)(2)).

[15] Defendants mention in their initial motion that the continuation of Mr.

**DONE** and **ORDERED** in Orlando, Florida on October 4, 2023.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

McKenzie's deposition should be at Plaintiff's cost.   Doc. No. 79, at 1.   However, neither side further addresses this request in their respective supplemental briefing, *see* Doc. Nos. 86, 89, and upon consideration, the Court does not find such a sanction warranted at this time.